IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUAN JORDAN and CHERI UHRINEK individually, and on behalf of all others similarly situated | : : : : | CIVIL ACTION |
| v. | : : | |
| MERIDIAN BANK, THOMAS CAMPBELL and CHRISTOPHER ANNAS | : : | NO.  17-5251 |

## MEMORANDUM

**Padova, J.**                                                                                      **March 18, 2019**

Plaintiffs Juan Jordan and Cheri Uhrinek have brought this matter as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and as a class action pursuant to New Jersey and Pennsylvania law.  They contend that their former employer, Meridian Bank, failed to pay them required overtime wages.  Before the Court is Plaintiffs' "Motion for Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b)," in which Plaintiffs seek conditional certification of this case as a collective action under the FLSA and ask that notice of this action be sent to similarly situated persons.  For the following reasons, we grant the Motion to the extent Plaintiffs seek conditional certification of a collective of Loan Officers employed by Meridian who were not paid an overtime premium for hours worked in excess of 40 in a given workweek and we deny the Motion to the extent that Plaintiffs seek conditional certification of a collective made up of Loan Officers employed by Meridian who were misclassified as exempt employees.

## I.      FACTUAL BACKGROUND

Meridian is a full-service bank based in Pennsylvania.  (Kim Aff., Defs.' Ex. A, ¶ 3.)  In addition to other services, Meridian provides residential mortgage loans through branch locations

located in Pennsylvania, Delaware and New Jersey.  (Id. ¶¶ 6-7.)  During the relevant time period, Meridian operated 17 branch locations:  ten in Pennsylvania, four in Delaware, and three in New Jersey.  (Id. ¶ 7.)  Meridian presently operates fourteen branch locations.  (Id. ¶ 8.)  Defendant Thomas Campbell is Meridian's Senior Vice President for Residential Lending.  (Id. ¶ 5.)  Defendant Christopher Annas is Meridian's President and Chief Executive Officer.  (Id. ¶ 4.)  Plaintiffs, and the individuals they seek to represent in the FLSA collectives were employed as Loan Officers by Meridian during the relevant time period.  Meridian has employed 131 Loan Officers since June 1, 2015.  (Id. ¶ 13.)

Jordan was employed as a Loan Officer by Meridian in its Northfield, New Jersey branch from October 2012 to July 2016.  (Jordan Decl., Pls.' Mot. Ex. B, ¶¶ 3-4.)  He primarily worked out of Meridian's office but also worked from a home office during the evening and on weekends.  (Id. ¶¶ 4-5.)  He spent the vast majority of his working hours selling residential home loans to consumers over the telephone.  (Id. ¶ 7.)  When Jordan began working for Meridian, he was classified as "exempt" and paid on a commission only basis, so that he was paid only when he sold a home loan and did not always receive federally required minimum or overtime wages.  (Id. ¶¶ 8-9, 13.)  In June 2015, he was reclassified and paid on an hourly basis.  (Id. ¶ 10.)  The reclassification also made him eligible for overtime pay when he worked more than 40 hours in one work week.  (Kim Aff. Ex. 1 at 2 of 13.)  Jordan generally worked at least 10 hours each day, Monday through Friday, and worked additional hours on the weekend so that he worked as many as 60 hours per week.  (Jordan Decl. ¶¶ 11-12.)  However, he was never paid overtime compensation of one and one-half times his regular rate of pay when he worked more than 40 hours in one week.  (Id. ¶ 13.)

Uhrinek was employed as a Loan Officer by Meridian in its Mechanicsburg, Pennsylvania branch from December 2012 until June 2017.  (Uhrinek Decl., Pls.' Mot. Ex. C, ¶¶ 3-4.)  She worked out of both Meridian's Mechanicsburg office and a home office.  (Id. ¶¶ 4-5.)  Like Jordan, she spent the vast majority of her working hours selling residential home loans to consumers over the phone.  (Id. ¶ 7.)  Before she was reclassified in June 2015, she was classified as an "exempt" employee and was paid on a commission only basis, so that she was only paid if she sold a home loan and did not always received federally required minimum and overtime wages.  (Id. ¶¶ 8-9, 13.)  In June 2015, Uhrinek, like Jordan, was reclassified and paid on an hourly basis.  (Id. ¶ 10.)  The reclassification made Uhrinek eligible for overtime pay if she worked more than 40 hours in one week.  (Kim Aff. Ex. 1 at 4 of 13.)  However, Uhrinek was not paid overtime compensation of one and one-half times her regular rate of pay when she worked more than 40 hours in one week, even though she worked as many as 60-70 hours per week throughout her employment with Meridian.  (Uhrinek Dec. ¶¶ 12-13.)

The Amended  Collective/Class Action Complaint ("Amended Complaint") alleges the following.  Prior to June 30, 2015, Defendants knowingly misclassified its Loan Officers as exempt employees and failed to pay them minimum and overtime wages required by federal and state law.  (Am. Compl. ¶ 1.)  After June 30, 2015, Defendants reclassified its Loan Officers as hourly employees.  (Id.)  During the relevant time period, Defendants unilaterally dictated and controlled the terms and conditions of the Loan Officers' employment, including their employment classification, the nature of their work, their productivity requirements, the policies governing their employment, the manner in which their time was recorded, and the manner in which their wages were calculated.  (Id. ¶ 16.)  Pursuant to its policies, Meridian knowingly permitted Plaintiffs and the other Loan Officers to arrive early for work, stay late at work, and work on weekends to meet

its productivity requirements.  (Id. ¶ 17.)  As a result, Plaintiffs and the other Loan Officers routinely worked more than 40 hours per week.  (Id.)  After Meridian reclassified the Loan Officers in June 2015, Defendants implemented common practices intended to discourage or prevent Plaintiffs and the other Loan Officers from reporting all of their hours worked, so that Plaintiffs and the other Loan Officers were not paid overtime premium wages in most, if not all, workweeks. (Id. ¶ 20.)

Plaintiffs seek to prosecute this matter as a collective action pursuant to 29 U.S.C. § 216(b)[1] on behalf of the following FLSA Collectives:  (1) "[a]ll individuals who worked as inside sales Loan Officers for Defendants at any time from the start of the maximum limitations period to June 30, 2015, were classified as exempt employees and worked weeks in which they did not earn either required minimum or overtime wages (the "Misclassification Collective"); (2) "[a]ll individuals who worked as inside sales Loan Officers for Defendants at any time since June 30, 2015 and were not paid overtime wages owed for all time worked in excess of 40 hours in given workweeks (the "Unpaid Overtime Collective").  (Id. ¶ 21.)  Plaintiffs maintain that they are members of both of the putative Collectives defined above.  (Am. Compl. ¶¶ 24-25.)

The Amended Complaint asserts two claims pursuant to the FLSA and two state law claims.  Count I asserts a claim for failure to pay required minimum and overtime wages prior to

---

[1]29 U.S.C. § 216(b) provides that:
Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . .  An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.
29 U.S.C. § 216(b).

June 30, 2015 in violation of 29 U.S.C. § 206(a)(1)(C) and § 207(a)(1). (Id. ¶¶ 41-57.) Count II asserts a claim for failure to pay overtime wages after June 30, 2015 in violation of 29 U.S.C. § 207(a)(1). (Id. ¶¶ 59-65.) Count III asserts a claim on behalf of Jordan and a sub-class of individuals who were employed as Loan Officers by Meridian in New Jersey prior to June 30, 2015, for violation of the New Jersey Wage and Hour Regulations for failure to pay minimum and overtime wages in violation of N.J. Stat. Ann. 34:11-56a4 and N.J. Admin. Code § 12:56-3.1. (Id. ¶¶ 67-84.) Count IV asserts a claim on behalf of Uhrinek and a sub-class of individuals who were employed as Loan Officers in Pennsylvania by Meridian prior to June 30, 2015, for violation of Sections 4(a) and 4(c) of the Pennsylvania Minimum Wage Act ("PMWA") by failing to pay required minimum and overtime wages. (Id. ¶¶ 86-101.) Plaintiffs have not yet moved for certification of the New Jersey and Pennsylvania sub-classes.

## II.    LEGAL STANDARD

Plaintiffs have moved for conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b). "Collective actions brought under the FLSA are governed by § 216(b), which provides for an opt-in procedure for plaintiffs desiring to be included in the litigation." Harrison v. DelGuerico's Wrecking & Salvage, Inc., 305 F.R.D. 85, 87 (E.D. Pa. 2015) (citing 29 U.S.C. § 216(b)). "There are two requirements for potential plaintiffs to be included in the collective action:  plaintiffs must (1) be 'similarly situated' and (2) give written consent." Id. (quoting 29 U.S.C. § 216(b)). "However, the 'similarly situated' standard for employees to proceed collectively under the FLSA is not defined by the statute." Id. at 88 (citing Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 192 (3d Cir. 2011), rev'd on other grounds sub nom. Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66 (2013)). "The FLSA also does not provide specific procedures by which potential plaintiffs may opt in, but the Supreme Court has held that

'district courts have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs.'" Id. (alterations in original) (quoting Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989)).

The United States Court of Appeals for the Third Circuit has adopted a two-step approach for certification of collective actions pursuant to 29 U.S.C. § 216(b). Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 535-36 (3d Cir. 2012). "During the initial phase, which is conducted early in the litigation process when the court has minimal evidence, 'the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff.'" Harrison, 305 F.R.D. at 88 (quoting Symczyk, 656 F.3d at 192). "'[I]f the plaintiff carries [his] burden at this threshold stage, the court will "conditionally certify" the collective action for the purposes of notice and pretrial discovery.'" Id. (alterations in original) (quoting Symczyk, 656 F.3d at 192). However, "'conditional certification' is not really a certification. It is actually 'the district court's exercise of [its] discretionary power . . . to facilitate the sending of notice to potential class members, and is neither necessary nor sufficient for the existence of a representative action under [the] FLSA.'" Zavala, 691 F.3d at 536 (first and third alterations in original) (quoting Symczyk, 656 F.3d at 194). "After discovery, and with the benefit of a much thicker record than it had at the notice stage, a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." Symczyk, 656 F.3d at 193 (internal quotation omitted). "If the plaintiff carries his heavier burden during the second phase 'the case may proceed to trial as a collective action.'" Harrison, 305 F.R.D. at 88 (quoting Symczyk, 656 F.3d at 193).

The Third Circuit has instructed district courts to apply "a 'fairly lenient standard' . . . for conditional certification" at the first step.  Zavala, 691 F.3d at 535 (quoting Zavala v. Wal-Mart Stores, Inc., Civ. A. No. 03-5309, 2010 WL 2652510, at *2 (D.N.J. June 25, 2010)).[2]  Thus, at the first step, the "[p]laintiff must make 'a modest factual showing that the similarly situated requirement is satisfied.'"  Titchenell v. Apria Healthcare Inc., Civ. A. No. 11-563, 2012 WL 3731341, at *3 (E.D. Pa. Aug. 29, 2012) (quoting Bosley v. Chubb Corp., Civ. A. No. 04-4598, 2005 WL 1334565, at *3 (E.D. Pa. June 3, 2005)).  "Without evaluating the merits of plaintiff's case, the Court must determine 'whether plaintiff's proposed class consists of similarly situated employees who were collectively the victims of a single decision, policy, or plan.'"  Id. (quoting Lugo v. Farmer's Pride Inc., Civ. A. No. 07-749, 2008 WL 638237, at *3 (E.D. Pa. Mar. 7, 2008)).  Thus, "[u]nder this standard, 'a plaintiff must produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [him] and the manner in which it affected other employees.'"  Harrison, 305 F.R.D. at 88 (second alteration in original) (quoting Symczyk, 656 F.3d at 193); see also Drummond v. Herr Foods Inc., Civ. A. No. 13-5991, 2015 WL 894329, at *2 (E.D. Pa. Mar. 2, 2015) (same).  "This is a lenient standard but requires some evidence beyond mere speculation that the defendant's policy affected other employees."  Drummond, 2015 WL 894329, at *2 (citation omitted).

## III.   DISCUSSION

As noted above, Plaintiffs move to conditionally certify two putative FLSA collectives and ask us to allow them to send Notice to the Loan Officers who are potentially members of those collectives so that they can opt-in to this action.  Defendants oppose conditional certification of

---

[2] District courts apply a "'stricter standard' . . . on final certification, in which the court actually determines whether the plaintiffs are similarly situated."  Zavala, 691 F.3d at 535-36 (citation omitted).

the Misclassification Collective on the ground that the statute of limitations has expired with respect to all claims that potential members of that Collective could possibly bring with respect to their classification as exempt employees prior to May 31, 2015.  Defendants oppose conditional certification of the Overtime Collective on the grounds that Plaintiffs have not submitted sufficient evidence that they are similarly situated to the potential members of the Overtime Collective.

A.      The Misclassification Collective

Defendants have submitted evidence that they reclassified all of Meridian's Loan Officers as nonexempt as of May 31, 2015 so that they would be paid on an hourly basis at a wage rate exceeding the federally required minimum wage thereafter.  (See Kim. Aff. Ex. 2.)  There is no evidence that this reclassification did not occur on that date or that Loan Officers were not paid on an hourly basis beginning on June 1, 2015.  Defendants assert that any claims relating to Loan Officers who were classified as exempt and paid on a commission only basis thus accrued prior to June 1, 2015 and are barred by the applicable statute of limitations.

The limitations period applicable to Plaintiffs' FLSA claims is two years, unless the defendant's violation of the FLSA is willful, in which case the applicable limitations period is three years.  See 29 U.S.C. § 255(a) (stating that a "cause of action . . . shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued").  "For an opt-in plaintiff . . . the action commences only upon filing of a written consent."  Symczyk, 656 F.3d at 200 (citing 29 U.S.C. § 256(b)).  Defendants argue that the two-year statute of limitations applies in this case because they classified the Loan Officers as exempt prior to May 31, 2015 based on the United States Department of Labor Wage and Hour Division opinion letter FLSA2006-11, and therefore, any misclassification of the Loan Officers could not have been

willful.  It would, however, be premature to decide whether Defendants acted willfully before the parties have engaged in full discovery.  See Chung v. Wyndham Vacation Resorts, Inc., Civ. A. No. 14-490, 2014 WL 4437638, at *4 (M.D. Pa. Sept. 9, 2014) ("'Whether Defendant['s] violations of the FLSA were willful is an issue going to the merits of the case and not whether notice should be issued to potential claimants. Facts regarding willfulness must be explored during discovery, and the [Defendant] may challenge the three-year statute of limitations at a later date.'" (alterations in original) (quoting Gallagher v. Lackawanna Cty., Civ. A. No. 07-912, 2008 WL 9375549, at *9 (M.D. Pa. May 30, 2008))); Mavrinac v. Emergency Med. Ass'n of Pittsburgh (EMAP), Civ. A. No. 04-1880, 2007 WL 2908007, at *9 (W.D. Pa. Oct. 2, 2007) ("Whether there has been a willful violation of the Fair Labor Standards Act . . . is a question of fact to be determined by the fact finder by examining the evidence at trial." (citing Cunningham v. Freedom Ford Sales, Inc., Civ. A. No. 06-205, 2007 WL 2404739, at *7 (W.D. Pa. Aug. 17, 2007))). Consequently, for the purposes of the instant Motion, we will only consider whether the maximum three years limitations period has expired with respect to claims related to Loan Officers' alleged misclassification as exempt employees.

During the Hearing held on March 14, 2019, Plaintiffs conceded that the maximum limitations period has expired with respect to the misclassification claims of Loan Officers who have not yet opted-in to this action.  However, they ask that we equitably toll the statute of limitations to allow the members of the putative Misclassification Collective to opt-into this action with a 12-16 week claims period for those claims.  "Equitable tolling is a doctrine that 'can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'"  Alvarez v. BI Inc., Civ. A. No. 16-2705, 2018 WL 2288286, at *13 (E.D. Pa. May 17, 2018) (quoting Santos ex rel.

Beato v. United States, 559 F.3d 189, 197 (3d Cir. 2009)). "The doctrine is 'read into every federal statute of limitation including the FLSA.'" Id. (quoting Woodard v. FedEx Freight E., Inc., 250 F.R.D. 178, 193 (M.D. Pa. 2008)). "However, the United States Court of Appeals for the Third Circuit has described equitable tolling as an 'extraordinary' remedy to be applied 'only sparingly.'" Id. (quoting Santos ex rel. Beato, 559 F.3d at 197).

Prior to entering into mediation of these claims in May 2018, the parties entered into a tolling agreement that began on March 8, 2018 and terminated 30 days after the mediation. (See Pls.' 3/29/18 letter, Pls.' Supp. Ex. A.) Thus, pursuant to their tolling agreement, the claims of the members of the putative misclassification collective were tolled for 94 days, from March 8, 2018 until June 9, 2018. Since the maximum three-year statute of limitations would have expired on Plaintiffs' claims related to misclassification on May 31, 2018 without the tolling agreement, we find, taking the tolling agreement into account, that those claims did not expire until September 9, 2018. Thus, Plaintiffs ask us to equitably toll the maximum statute of limitations related to the claims of the putative misclassification collective from September 9, 2018 until after they have notified members of the putative misclassification collective of their claims and those individuals have had the opportunity to opt-into this action with a 12-16 week claims period.

"The Third Circuit has held that equitable tolling of a statutory limitations period may be appropriate where: (1) 'the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision'; (2) 'the plaintiff in some extraordinary way has been prevented from asserting his rights'; (3) or 'the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.'" McLaughlin v. Seneca Res. Corp., Civ. A. No. 17-255, 2018 WL 1784554, at *3 (W.D. Pa. Apr. 13, 2018) (quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 591 (3d Cir. 2005)). In this case,

10

Plaintiffs have not timely asserted their rights in the wrong forum and they have not submitted any evidence that Defendants actively misled the Loan Officers regarding claims related to their alleged misclassification as exempt employees.  Consequently, we consider only the second scenario, where the plaintiffs "ha[ve] been prevented from asserting [their] rights" in an "extraordinary way."  Id. (quotation omitted).

"Courts have found equitable tolling to be appropriate in cases where a delay in a ruling by the court would otherwise prejudice the opt-in plaintiffs."  Bosley v. Chubb Corp., Civ. A. No. 04-4598, 2007 WL 9604965, at *1 no. 1(E.D. Pa. Feb. 20, 2007) (citations omitted).  However, "in the average case in which the delay is attributable to the normal litigation process, courts have held that equitable tolling is not appropriate."  Titchenell, 2012 WL 3731341, at *7 (citations omitted); see also Alvarez, 2018 WL 2288286, at *14-16 (denying request for equitable tolling even though plaintiff's motion for notice had been pending before the district court for 13 months, because "delay in issuing a court-approved notice, caused only by the time that a motion for conditional certification is under consideration by the court, is not an appropriate ground for equitable tolling").

The instant Motion for Order Authorizing Notice was filed on June 21, 2018.  Defendants filed a response to that Motion on July 19, 2018, Plaintiffs filed a Reply Brief on August 6, 2018, and Defendants filed a Sur-Reply on August 18, 2018.  The maximum limitations period for claims brought with respect to the alleged misclassification of Loan Officers as exempt employees expired, pursuant to the parties' tolling agreement, on September 9, 2018.  The maximum limitations period therefore expired less than 30 days after briefing concluded with respect to the instant Motion.  Consequently, even if the Court had decided the instant Motion the day after the last brief was filed, the members of the putative Misclassification Collective would not have

received notice in time to opt-in to this action before the maximum limitations period expired with respect to any claims they could have brought related to their alleged misclassification. Under these circumstances, we conclude that the Court's delay did not, in some extraordinary way, prevent the members of the putative misclassification collective from asserting their rights. McLaughlin, 2018 WL 1784554, at *3 (quotation omitted); see also Titchenell, 2012 WL 3731341, at *7 (citations omitted); Alvarez, 2018 WL 2288286, at *14-16. Consequently, we deny Plaintiffs' request for equitable tolling of their misclassification claims and we deny the instant Motion to the extent Plaintiffs seek conditional certification of the Misclassification Collective.

B.       The Unpaid Overtime Collective

Plaintiffs seek to establish that Meridian failed to pay them, and the potential members of the Unpaid Overtime Collective, federally required overtime wages. The FLSA requires employers to pay employees one and one-half times their regular rate of pay for all hours worked over 40 in a given workweek. See 29 U.S.C. § 207. An employer must pay employees for all of the hours they were permitted to work, even if the employer did not require or request the employee to work all of those hours. See 29 C.F.R. § 785.11 (stating that "[w]ork not requested but suffered or permitted is work time"). This rule applies to "work performed away from the premises or the job site, or even at home. If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked." 29 C.F.R. § 785.12. Consequently, if an employer permits an employee to work more than 40 hours per week, the employer must pay the employee for those overtime hours, even if the employer has a rule against overtime work. See 29 C.F.R. § 785.13.

　　　　1.　The record evidence

Plaintiffs maintain that they have satisfied the requirement for conditional certification that they make a modest factual showing that they are similarly situated to the potential opt-in plaintiffs because they were all the victims of a single companywide policy that resulted in their not being paid federally required overtime wages. In support of their position, Plaintiffs have submitted their own Declarations and the Declarations of four individuals who opted-in to this litigation by filing Plaintiff Consent Forms: William Chang, Leeanne Polistina, Robert Nepa, and James Garrity (referred to herein as the "opt-in plaintiffs"). (Pls.' Exs. B-G.) Jordan, Uhrinek, and the opt-in plaintiffs all worked for Meridian as Loan Officers within three years prior to the filing of the Complaint or the filing of their Plaintiff Consent Forms opting-in to this action.[3] (See Jordan Decl. ¶ 3; Uhrinek Decl. ¶ 3; Chang Decl., Pls.' Mem. Ex. D, ¶ 3; Polistina Decl., Pls.' Mem. Ex. E, ¶ 3; Nepa Decl., Pls.' Mem. Ex. F, ¶ 3; Garrity Decl., Pls.' Mem. Ex. G, ¶ 3.) Jordan, Chang, Polistina, Nepa, and Garrity worked in Meridian's Northfield, New Jersey branch, where they reported to former Meridian Branch Manager Joe Jackson. (Jordan Decl. ¶ 4; Chang Decl. ¶ 4; Polistina Decl. ¶ 4; Nepa Decl. ¶ 4; Garrity Decl. ¶ 4; Kim Aff. ¶ 20.) As we noted above, Uhrinek worked in Meridian's Mechanicsburg, Pennsylvania branch. (Uhrinek Decl ¶ 4.)

Plaintiffs maintain that they and all of the potential members of the Unpaid Overtime Collective are similarly situated because they performed the same job duties. The Declarations submitted by Plaintiffs show that Plaintiffs and the opt-in plaintiffs all performed the same basic tasks, namely "calling leads, collecting and inputting client information in to Meridian's database, offering loan programs, and selling residential home loans" and spent the vast majority of their

---

[3] Chang's, Nepa's, and Garrity's Plaintiff Consent Forms were filed on November 28, 2017. (See Docket No. 2-1.) Polistina's Plaintiff Consent Form was filed on March 12, 2018. (See Docket No. 25-1.)

working hours "selling residential home loans to consumers, often over the telephone." (Jordan Decl. ¶¶ 6-7; Uhrinek Decl. ¶¶ 6-7; Chang Decl. ¶¶ 6-7; Polistina Decl. ¶¶ 6-7; Nepa Decl. ¶¶ 6-7; Garrity Decl. ¶¶ 6-7.) Plaintiffs and the opt-in plaintiffs also state in their Declarations that Defendants instructed them and other Loan Officers "that selling home loans was a loan officer's most important duty." (Jordan Decl. ¶ 16; Uhrinek Decl. ¶ 16; Chang Decl. ¶ 16; Polistina Decl. ¶ 16; Nepa Decl. ¶ 16; Garrity Decl. ¶ 16.)

Plaintiffs also maintain that they and all of the potential members of the Unpaid Overtime Collective are similarly situated in that they have been subjected to the same company-wide policy of permitting Loan Officers to work more than 40 hours per week to meet Meridian's productivity requirements, but prohibiting them from entering more than 40 hours per week on their time records. Jordan, Uhrinek, Chang, Polistina, Nepa, and Garrity all report that they regularly worked more than 40 hours per week, sometimes as many as 60 or more hours per week, but Meridian did not pay them overtime premium wages for the hours they worked in excess of 40 hours per week. (Jordan Decl. ¶¶ 11-13; Uhrinek Decl. ¶¶ 11-13; Chang Decl. ¶¶ 11-13; Polistina Decl. ¶¶ 11-13; Nepa Decl. ¶¶ 11-13; Garrity Decl. ¶¶ 11-13.) They also all report that Defendants encouraged them to work long hours to close sales. (Jordan Decl. ¶ 16; Uhrinek Decl. ¶ 16; Chang Decl. ¶ 16; Polistina Decl. ¶ 16; Nepa Decl. ¶ 16; Garrity Decl. ¶ 16.) They also all state that Defendants instructed them not to record working more than 40 hours in any given workweek, even though Defendants were aware that they routinely worked more than 40 hours in given workweeks. (Jordan Decl. ¶ 15; Uhrinek Decl. ¶ 15; Chang Decl. ¶ 15; Polistina Decl. ¶ 15; Nepa Decl. ¶ 15; Garrity Decl. ¶ 15.) They all further state that they are aware, based on their own knowledge and experience and based on information from other employees of Meridian and from Meridian supervisors, that Meridian did not pay its Loan Officers overtime premium wages for

hours worked in excess of 40 in a given workweek, regardless of location.  (Jordan Decl. ¶¶ 18-19; Uhrinek Decl. ¶¶ 18-19; Chang Decl. ¶¶ 18-19; Polistina Decl. ¶¶ 18-19; Nepa Decl. ¶¶ 18-19; Garrity Decl. ¶¶ 18-19.)

Plaintiffs have also submitted the Declaration of Mark Lacy, a former Meridian Branch Manager, in support of their claim that they are similarly situated to members of the Unpaid Overtime Collective because they were all the victims of a single companywide policy that resulted in their not being paid federally required overtime wages.  Lacy was the manager of Meridian's Mount Laurel, New Jersey branch from January 2016 to August 2017.  (Lacy Decl., Pls.' Reply Ex. A, ¶¶ 2-3.)  He states that the Loan Officers in his office regularly worked more than 40 hours per week and often worked 50-60 hours per week.  (Id. ¶ 5.)  He knows this because he typically worked 60 hours per week and observed the time the Loan Officers were working.  (Id.)  He further states that, "[a]lthough Loan Officers at Meridian typically worked more than 40 hours per week, Meridian had a company wide practice and policy to prohibit them from recording the vast majority, or any, of their actual overtime hours worked."  (Id. ¶ 7.)  He also describes what happened if a loan officer in his branch recorded more than 40 hours of work in a week:

> If a Loan Officer in my office recorded more than 40 hours of work per week, I would get an email from Thomas Campbell, Vice President of Mortgage Operations, informing me that the Loan Officer had submitted a time record with more than 40 hours per week.  In response to an email of this kind, Meridian's policy and practice was to require me to send an email to the Loan Officer to inform them that they should "correct" their time record by ensuring that it showed 40 hours or less per week.  At the very least, the Loan Officer was required to dramatically "correct" their time record so that it falsely showed only a nominal amount of overtime (1-2 hours) worked.
>
> I discussed the policy described in the preceding paragraph with Joseph Jackson, the manager of Meridian's Northfield, New Jersey office.  He confirmed that he also received emails from Meridian's corporate management under the same circumstances (i.e., when a Loan Officer recorded more than 40 hours in a given workweek) and that this policy applied to all of Meridian's offices.

> Meridian's policy originated from upper management.  It was not my policy nor was it a practice that originated at the office level.  I was following Meridian's corporate policy, which was to make sure that the Loan Officers did not record the vast majority, if any, of their hours worked in excess of 40 in any given week.

(Lacy Decl. ¶¶ 8-10.)  Lacy also states in his Declaration that, as a result of these policies and practices, "Meridian did not pay Loan Officers for approximately 10 to 15 hours of overtime that they typically worked each week."  (Id. ¶ 12.)

### 2.   The sufficiency of the record evidence

Defendants argue that we should deny the instant Motion as to the Unpaid Overtime Collective because the evidence summarized above is insufficient to make the requisite "modest factual showing." Titchenell, 2012 WL 3731341, at *3 (citation omitted).  Defendants contend that Plaintiffs have failed to make the requisite showing because their Declarations are inadmissible and because the Declarants have failed to identify the "similarly situated individuals" to whom they refer anonymously.  Defendants rely on Wright v. Lehigh Valley Hospital, Civ. A. No. 10-431, 2010 WL 3363992 (E.D. Pa. Aug. 24, 2010), in which the district court denied conditional certification because the plaintiff "failed to proffer any admissible evidence that would allow this Court [to] infer that other current or former [employees] endured deprivations similar to those [plaintiff] allegedly experienced" and, while plaintiff made "repeated references to similarly situated [employees], she fail[ed] to name a single [employee]—other than herself— willing to opt-in to the proposed class." Id. at *4.  Defendants further argue that we should, at the very least, ignore any hearsay statements contained in the Declarations submitted by Plaintiffs. See Siguenza v. Bayview Asset Mgmt., LLC, Civ. A. No. 14-5336, 2015 WL 3818739, at *3 (E.D. Pa. June 17, 2015 (concluding that general references to employees in other offices in declarations provided by plaintiff were not sufficient to make a "'modest factual showing' as to potential opt-

in[] employees" from those offices where the references were inadmissible hearsay and "pure speculation").

"[T]he United States Court of Appeals for the Third Circuit has not directly addressed whether declarations containing hearsay are admissible for purposes of conditional certification." Meals v. Keane Frac GP LLC, Civ. A. No. 16-1674, 2017 WL 2445199, at *4 (W.D. Pa. June 6, 2017) (citations omitted).  Many courts in this Circuit have determined that such declarations may be considered.  See Jones v. All. Inspection Mgmt., LLC, Civ. A. No. 13-1662, 2014 WL 1653112, at *3 (W.D. Pa. Apr. 24, 2014) ("This Court is not persuaded that courts impose a blanket prohibition against consideration of hearsay or other arguably inadmissible-at-trial evidence in a conditional certification determination." (citing Bredbenner v. Liberty Travel, Inc., Civ. A. No. 09-905, 2009 WL 2391279, at *2, n.1 (D.N.J. 2009))); Bredbenner, 2009 WL 2391279, at *2 n.1 (denying request that "portions of Plaintiff's supporting declarations be stricken pursuant to Fed. R. Civ. P. 56(e) as inadmissible hearsay, conclusory and not based on personal knowledge" because "Rule 56 applies to motions for summary judgment [which] differ significantly from non-dispositive notions for conditional certification [and] [t]he standard for conditional certification is lenient and does not address the merits of the case").

Unlike the plaintiff in Wright, the Plaintiffs in this case have submitted the Declarations of four opt-in plaintiffs who declare that they were also denied payment for hours worked in excess of 40 in a given week and the Declaration of a Branch Manager who states that it was Meridian's policy that Loan Officers should not be paid overtime.  (See Chang Decl. ¶¶ 11-13; Polistina Decl. ¶¶ 11-13; Nepa Decl. ¶¶ 11-13; Garrity Decl. ¶¶ 11-13; Lacy Decl. ¶¶ 7-12.)  These Declarations are primarily based on the personal knowledge of the declarants and contain few statements referencing the experiences of unidentified individuals.  Since the Third Circuit has not directly

addressed the admissibility of hearsay evidence in connection with conditional certification, Meals, 2017 WL 244899, at *4, we will consider the Declarations submitted by Plaintiffs in support of their Motion for Conditional Certification in their entireties, and we decline the opportunity to deny the Motion simply because those Declarations contain hearsay and references to unidentified individuals.

Defendants also contend that Plaintiffs' claims that they worked overtime in order to satisfy Defendants' productivity requirements cannot support conditional certification because the Declarations submitted by Plaintiffs do not mention productivity requirements.  See Andersen, 2012 WL 12871958, at *5 (concluding that the plaintiffs' reference to performance goals in their declarations was insufficient to establish that the defendant "expressly or impliedly – through the imposition of performance goals – required Plaintiffs to work additional hours without compensation"  (citing Russell v. Ill. Bell Tel. Co., 575 F. Supp. 2d 930 (N.D. Ill. 2008))). However, Lacy states in his Declaration that "Meridian required all Loan Officers to meet productivity requirements or quotas" and that Loan Officers who "did not meet these productivity requirements . . . would be disciplined or fired."  (Lacy Decl. ¶ 6.)  We thus conclude that the record before us does contain evidence that Meridian imposed productivity requirements on its Loan Officers.

Defendants further argue that the following statements made by Plaintiffs and opt-in plaintiffs in their Declarations are too vague and conclusory to support conditional certification: "defendants instructed me and other loan officers not to record more than forty (40) hours in any given workweek, notwithstanding their knowledge that I, and other loan officers, routinely worked in excess of 40 hours in given workweeks."  (Jordan Decl. ¶ 15; Uhrinek Decl. ¶ 15; Chang Decl. ¶ 15; Polistina Decl. ¶ 15; Nepa Decl. ¶ 15; Garrity Decl. ¶ 15.)  Specifically, Defendants maintain

that these statements are unreliably vague because none of the Declarants identify the individual who instructed them not to record more than 40 hours of work in a given workweek, the individual who knew that they worked in excess of forty hours in given workweeks, the manner in which those individuals gained their knowledge, and how the Declarants knew that these individuals possessed such knowledge.  See Werner v. Waterstone Mortg. Corp., Civ. A. No. 17-608, 2018 WL 813525, at *2-3 (W.D. Wisc. Feb. 9, 2018) (denying motion for conditional certification of FLSA overtime action because the declarations submitted by plaintiffs were "so conclusory that they provide[d] little insight into Waterstone's policies" and merely alleged that defendant "told them to underreport their hours" );  see also Settles v. General Electric, Civ. A. No. 12-602, 2013 WL 12143084, at *4 (W.D. Mo. Feb. 19, 2013) (denying motion for conditional certification of FLSA overtime collective where affidavits submitted in support of motion failed to identify who "discouraged them from submitting overtime, or when, where or how such instances occurred").  However, in addition to the Declarations submitted by Plaintiffs, the record of this Motion also contains the Lacy Declaration, which provides specific information about Meridian's alleged policy of prohibiting Loan Officers from recording the overtime hours they worked.  (See Lacy Decl. ¶¶ 8-9.)  We conclude, accordingly, that Plaintiffs' assertion that Defendants instructed them not to record more than 40 hours of work in a given workweek is supported by record evidence that is neither vague nor conclusory.

Defendants also assert that Plaintiffs have failed to satisfy their burden of showing that Meridian had a company-wide policy of not paying overtime to Loan Officers because the Declarations they submitted do not identify other loan officers who were encouraged to work uncompensated overtime hours or explain how the declarants knew that unidentified individuals instructed Loan Officers that they should not record more than 40 hours of work in a given week.

See Armstrong v. Weichert Realtors, Civ. A. No. 05-3120, 2006 WL 1455781, at *1 (D.N.J. May 19, 2006) (denying plaintiff's motion for conditional certification of an FLSA overtime collective where the only evidence submitted by plaintiff in support of certification was his own one-page declaration that consisted of vague and general statements about "all Loan Officers employed by [Defendant]").  See also Goldstein v. Children's Hosp. of Philadelphia, Civ. A. No. 10-1190, 2012 WL 5250385, at *5 (E.D. Pa. Oct. 24, 2012) (denying motion for conditional certification where the plaintiff "provided no direct evidence . . . that other employees were similarly situated to her with respect to [defendant's] policies and practices, [and where there was also no] evidence of opt-ins despite 10 months of discovery").  However, the Lacy Declaration is evidence that Loan Officers employed by Meridian in its Mount Laurel, New Jersey Branch were known by their Branch Manager to work more than 40 hours in given workweeks, were not paid overtime for those hours, and were discouraged or prevented from entering more than 40 hours of work per week into Defendants' timekeeping system by their Branch Manager pursuant to Defendants' unwritten policies.  Moreover, unlike the plaintiff in Goldstein who provided the court with no evidence of any opt-in plaintiffs, Plaintiffs in the instant case have filed opt-in notices for members of the putative collective on November 28, 2017 (five opt-in plaintiffs);  March 12, 2018 (one opt-in plaintiff); July 12, 2018 (five opt-in plaintiffs); October 4, 2018 (one opt-in plaintiff); and December 3, 2018 (one opt-in plaintiff).  (Docket Nos. 2, 25, 37, 46, 49.)

Defendants also argue that we should deny the Motion for Conditional Certification because Plaintiffs have, at most, submitted evidence that one or two rogue managers prevented them from being paid overtime in accordance with Meridian's written policies.  See Thompson v. Speedway SuperAmerica LLC, Civ. A. No. 08-1107, 2009 WL 130069, at *2 (D. Minn. Jan. 20, 2009) (denying motion for conditional certification of FLSA collective where plaintiffs failed to

"submit evidence that the *reason* why the employees were not compensated for [certain] tasks [was] not because of human error or a rogue store manager, but because of a corporate decision to ignore [the defendant's] published policies and refuse to pay for [those tasks]").   In this case, however, the Lacy Declaration provides evidence that Meridian had a corporate policy to not pay for overtime worked by its Loan Officers.  (See Lacy Decl. ¶¶ 7-11.)

        3.    Meridian's official policy

Defendants oppose conditional certification of the putative Unpaid Overtime Collective on the ground that the only company-wide policy that applied to all Loan Officers during the relevant time period was Meridian's official policy that Loan Officers accurately record all of the time they worked and that Loan Officers be paid one and one-half times their regular rate of pay for overtime hours.  Defendants rely on the Affidavit of Jina Kim, Meridian's Executive Vice President for Human Resources.  (Kim Aff. ¶ 2.)  Kim sent an email on May 26, 2015 to every Loan Officer employed by Meridian, informing the Loan Officers that their jobs were being reclassified and that they would be eligible for overtime pay beginning on May 31, 2015.  (Id. ¶ 15.)  She sent this email to Jordan, Uhrinek, Garrity, Nepa, Chang, and Polistina and attached copies of Meridian's MLO Compensation Addendum and Timekeeping Instructions and Meridian's Overtime Policy to this email.  (Id. ¶¶ 17-18, Exs. 1-3.)  Meridian's Compensation Addendum and Timekeeping Instructions state that Loan Officers "will need to record their hours worked through ADP's Time and Attendance module effective on Sunday, May 31st, 2015" and that their time has to be approved by their Branch Managers.  (Id. Ex. 2.)  This document also states that Loan Officers will be eligible for overtime pay with their "Branch Manager's email pre-approval" and that such overtime will be paid at a rate of one and one-half times the employee's regular rate of pay.  (Id.) The Overtime Policy states that "[n]on-exempt employees who work in excess of forty (40) hours

during any given work week are entitled to overtime pay." (Id. Ex. 3.)  It further states that "[n]o employee is authorized to work overtime unless approved by his/her immediate supervisor" and that "[o]vertime hours actually worked should be recorded on the employee's time sheet and approved by the supervisor before being forwarded to Payroll."  (Id.)  Kim held company-wide training seminars in which she trained all of Meridian's Branch Managers regarding the new Overtime Policy "and the importance of ensuring that MLOs accurately report all time worked." (Kim Aff. ¶ 19.)  Meridian has also provided the Affidavit of Tracy Panati, its Vice President for Human Resources, who states that Meridian has paid for a total of 379.75 hours of overtime worked by Loan Officers in thirteen of Meridian's seventeen branch locations since June 1, 2015. (Panati Aff., Defs.' Ex. B, ¶ 3.)

Meridian also argues that Plaintiffs cannot be similarly situated to the other Loan Officers they seek to represent because the other Loan Officers worked in branch offices of Meridan's that followed Meridian's written overtime policy.  In support of this argument, Meridian relies on Declarations provided by eight of its Branch Managers, who represent nine of its fourteen currently-operating branch offices.[4]  One of these Declarations was provided by Fred Connor, Branch Manager for Meridian's Mechanicsburg, Pennsylvania branch, who supervised Uhrinek when she was employed by Meridian.  (Connor Decl., Defs.' Ex. C, ¶ 4.)  Connor learned about Meridian's new timekeeping policy in May 2015 and attended the 2015 Branch Manager training on the new policy.  (Id. ¶¶ 5-6.)  He began implementing Meridian's timekeeping policy on June 1, 2015, and he has never instructed Loan Officers to record anything other than the time they

---

[4] Meridian has not provided a declaration from the Branch Manager of the Northfield, New Jersey Branch where Jordan, Change, Polistina, Nepa, and Garrity were employed.  (See Defs.' Opp. at 8 n.4.)

actually worked and he has never altered the amount of time recorded by a Loan Officer.  (Id. ¶¶ 7, 10-11.)

Joe Boffa, Branch Manager for Meridian's Wilmington, Seaford, and Dover, Delaware branches, supervises 12 Loan Officers.  (Boffa Decl., Defs.' Ex. D, ¶¶ 1, 3.)  The Loan Officers in his branches are paid overtime if they work more than 40 hours per week, and he has never changed a Loan Officer's timesheet.  (Id. ¶¶ 5, 7.)  Bob Rader, the Branch Manager of Meridian's Mountville, Pennsylvania branch and co-Branch Manager of the Mechanicsburg branch, discussed Meridian's new timekeeping and overtime policies with the Loan Officers who worked for him in 2015.  (Rader Decl., Defs.' Ex. E, ¶¶ 1-2, 9.)  He has never changed a Loan Officer's recorded time.  (Id. ¶ 9.)  Defendant Thomas Campbell, Branch Manager for Meridian's Plymouth Meeting, Pennsylvania branch and a Senior Vice President of Meridian, has instructed Loan Officers to record all of the time they work and has never changed any Loan Officer's time.  (Campbell Decl., Defs.' Ex. F, ¶¶ 3, 9.)   Rhonda Davidson, Branch Manager for Meridian's Wyomissing, Pennsylvania branch, received Kim's Spring 2015 email regarding Meridians new payment and overtime policies for Loan Officers and attended the company-wide meeting that Kim conducted at Meridian's headquarters regarding the new policies.  (Davidson Decl., Defs.' Ex. G, ¶¶ 1-2, 5.)  She has never instructed a Loan Officer to record less than all of the time they worked and has never changed the time entered by a Loan Officer in Meridian's timekeeping system.  (Id. ¶¶ 11-12.)  Sam Frisoli, Branch Manager for Meridian's Wilmington, Delaware branch, oversees 16 Loan Officers who must obtain his approval before they work more than 40 hours in one week.  (Frisoli Decl., Defs.' Ex. H, ¶¶ 2, 3, 7.)  In May 2015, he and other Branch Managers attended training regarding implementation of the new Loan Officer payment policy and how best to insure that Loan Officers accurately record their time.  (Id. ¶ 10.)  He also participated in webinar training

about the new timekeeping policy and system and instructed his Loan Officers regarding the system and the importance of accurately recording their time.  (Id. ¶¶ 11-12.)  He has never changed a time record submitted by a Loan Officer, unless there was an obvious error that was confirmed by the Loan Officer.  (Id. ¶ 16.)  C.J. Fitzgerald, Branch Manager of Meridian's Fort Washington, Pennsylvania branch, attended the spring 2015 training regarding the new timekeeping system for Loan Officers and also participated in webinar training about that system. (Fitzgerald Decl., Defs.' Ex. I, ¶¶ 1-2, 6-7.)  After his training, Fitzgerald explained the new policy to the Loan Officers employed in his branch.  (Id. ¶ 8.)  He reviews his Loan Officers' time records and has never changed a Loan Officer's recorded time.  (Id. ¶¶ 9-10.)  Adrienne Rehiel, Branch Manager of Meridian's Southampton, Pennsylvania branch, reports that only one of the Loan Officers who has worked for her has ever notified her that he had to work overtime.  (Rehiel Decl., Defs.' Ex. J, ¶¶ 11-12.)  She told him to record whatever hours he worked.  (Id. ¶ 12.)

Meridian maintains that the Motion for Conditional Certification should be denied because it has established through the above referenced evidence that it has a company-wide policy requiring payment of pre-approved overtime and it has paid Loan Officers for overtime worked in accordance with this policy.  Meridian relies on Richie v. Blue Shield of California, Civ. A. No. C-13-2693, 2014 WL 6982943 (N.D. Ca. Dec. 9, 2014), which noted "the presence of express policies prohibiting off-the-clock work, while by no means dispositive, tends to contradict the existence of a 'common policy' and therefore is a factor against FLSA certification."  Id. at *10 (citations omitted); see also Andersen v. Wells Fargo Fin., Inc., Civ. A. No. 11-0085, 2012 WL 12871958, at *6 (S.D. Iowa Feb. 6, 2012) ("The existence of a written policy dictating overtime pay is one factor weighing against conditional certification." (citation omitted)).  However, other courts in this Circuit have concluded that "arguments concerning actual payment of overtime hours

or the existence of a written policy to do so go to the merits of a case, and are thus inapplicable at this stage of the litigation."   Shakib v. Back Bay Rest. Grp., Inc., Civ. A. No. 10-4564, 2011 WL 5082106, at *3 (D.N.J. Oct. 26, 2011) (citing Anyere v. Wells Fargo, Co., Civ. A. No. 09-2769, 2010 WL 1542180, at *3 (N.D. Ill. Apr. 12, 2010); see also Burkhart-Deal v. Citifinancial, Inc., Civ. A. No. 07-1747, 2010 WL 457127, at *3 (W.D. Pa. Feb. 4, 2010) ("The fact that Defendant has a written policy requiring overtime pay, however, does not itself defeat conditional certification. These arguments, moreover, skirt the merits of Plaintiff's claims. It is inappropriate, at this stage in the litigation, for me to consider those merits." (citations omitted)); Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 67 (E.D. Pa. 2009) (stating that, at the conditional certification stage, an employer's written policies regarding off-the-clock work "are not dispositive of collective certification and this Court will not deny certification based on evidence of Defendant's official policy against such work" (citing Chabrier v. Wilmington Fin., Inc., Civ. A. No. 06-4176, 2006 WL 3742774, at *3 (E.D. Pa. Dec. 13, 2006))).   Thus, because Defendants' argument invites us "to evaluate the credibility of [the Declarants] or the merits of their claims, it is more properly considered at the second stage of the certification inquiry or on a motion for summary judgment." Viscomi v. Clubhouse Diner, Civ. A. No. 13-4720, 2016 WL 1255713, at *5 (E.D. Pa. Mar. 31, 2016) (citing Titchenell, 2011 WL 5428559, at *6).

Plaintiffs and Defendants have both submitted evidence regarding Meridian's policy with respect to payment of overtime to Loan Officers.   Plaintiffs have submitted evidence that it is Meridian's company-wide policy that Loan Officers should not be paid overtime and that Branch Managers should discourage or prevent Loan Officers from submitting time records that would require the payment of overtime.   (See Lacey Decl. ¶¶ 7-10.)   Defendants have submitted evidence that Meridian has a written policy requiring that Loan Officers should be paid an overtime

premium for hours worked in excess of 40 in a given workweek and evidence that this policy was implemented in some of Meridian's branch offices.  (See Kim Aff. ¶¶ 15, 19, Exs. 1-3; Panati Aff. ¶ 3; Connor Decl. ¶ 7;  Boffa Decl. ¶ 7; Rader Decl. ¶ 9; Campbell Decl. ¶ 9; Davidson Decl. ¶ 6; Frisoli Decl. ¶ 12; Fitzgerald Decl. ¶ 6.)

We may not evaluate the merits of Plaintiff's claims in our conditional certification analysis.  Titchenell, 2012 WL 3731341, at *3 (citation omitted);  Shakib, 2011 WL 5082106, at *3.  Accordingly, while we have considered  Defendants' evidence that Meridian had a written policy that Loan Officers should be paid overtime and that some Loan Officers received payments for overtime, we conclude that it would not be appropriate to weigh this evidence against Plaintiff's contrary evidence at this stage of the proceedings and that this evidence does not require the denial of the instant motion for conditional certification as to the Unpaid Overtime Collective.  See Holley v. Erickson Living, Civ. A. No. 11-2444, 2012 WL 1835738, at *4 n.4 (E.D. Pa. May 21, 2012) ("At the step-one inquiry, the Court does not weigh the evidence, resolve factual disputes, or reach the merits of Plaintiff's claims." (citation omitted)); Pereira, 261 F.R.D. at 67 ("Defendant's arguments and the evidence it has supplied invite this Court to wade into credibility and merit determinations of Plaintiff's claims, analyses improper for this stage in the proceedings."); Acevedo v. WorkFit Med. LLC, Civ. A. No. 14-6221, 2014 WL 4659366, at *5 (W.D.N.Y. Sept. 17, 2014) ("The existence of a formal, written policy does not mean the FLSA was not violated in practice.  To hold otherwise would allow employers to avoid FLSA liability simply by promulgating compliant handbooks and policies, regardless of their actual conduct.  Defendants cannot defeat Plaintiffs' motion [for conditional certification] on this basis.")

26

4.      Geographic scope of the putative Collective

Defendants argue that the Unpaid Overtime Collective should be limited to Loan Officers employed by Meridian in its Northfield, New Jersey Branch because there is very little evidence of FLSA violations in Meridian's other branches.  See Sawyer v. Health Care Sols. at Home, Inc., Civ. A. No. 16-5674, 2018 WL 1959632 (E.D. Pa. Apr. 25, 2018) (limiting FLSA collective to employees in certain of defendants' offices located in Pennsylvania because plaintiff's evidence only showed defendants' policy being applied employees of those offices (citing Burkhart-Deal, 2010 WL 457127, at *5)).  Plaintiffs have provided Declarations from Loan Officers employed in two of the 17 branches that Meridian operated during the relevant time period: the Northfield, New Jersey and Mechanicsburg, Pennsylvania branches.  (See Jordan Decl. ¶ 4; Uhrinek Decl. ¶ 4; Chang Decl. ¶ 4; Polistina Decl. ¶ 4; Nepa Decl. ¶ 4; Garrity Decl. ¶ 4.)  Plaintiffs have also provided the Declaration of the former Branch Manager of the Mount Laurel, New Jersey branch, who provided evidence that Loan Officers were not paid for all of the overtime they worked in his branch pursuant to a company-wide policy.  (Lacy Decl. ¶ 3.)  "[G]iven the FLSA's broad remedial purpose," Plaintiffs need not adduce evidence from employees located in every one of Meridian's offices to satisfy their burden of proof for certification of a collective action across three states. Bradford v. Logan's Roadhouse, Inc., 137 F. Supp. 3d 1064, 1078-79 (M.D. Tenn. 2015) (conditionally certifying an FLSA nationwide collective action in all states in which the defendant operates even though the plaintiffs did not present evidence from employees who worked in every state).  Consequently, while the evidence of record is not compelling as to the number of Meridian's branches involved in Defendant's alleged violations of the FLSA, we conclude that it satisfies Plaintiffs' burden, at this "lenient first step of conditional certification," to make a "'modest factual showing' that there are similarly situated persons who may desire to opt into this

litigation" who worked in all of Meridian's branch offices in Delaware, Pennsylvania, and New Jersey. Garcia v. Nunn, Civ. A. No. 13-6316, 2016 WL 1169560, at *3-4 (E.D. Pa. Mar. 25, 2016) (conditionally certifying nationwide FLSA collective based on Plaintiff's declaration describing conditions in five states).

## IV.   CONCLUSION

For the reasons stated above, we conclude that Plaintiffs have satisfied their burden"at this threshold stage" for conditional certification of an FLSA collective, i.e., they have made a "modest factual showing" that the employees who are potential members of the putative Unpaid Overtime Collective are similarly situated to the named Plaintiffs. Symczyk, 656 F.3d at 193. Accordingly, we grant the instant "Motion for Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b)" with respect to the Plaintiffs' request for conditional certification of this case as a collective action under the FLSA. The Unpaid Overtime Collective shall be made up of the following: all individuals who worked as Loan Officers for Defendants at any time during the maximum limitations period who were not paid overtime wages owed for all time worked in excess of 40 hours in given workweeks. (See Compl. ¶ 21; Pls.' Mem. at 1, 12.)

Plaintiffs also ask that we order Meridian to provide them with the names, mailing addresses, phone numbers, and email addresses of all individuals it employed who are potential members of the Unpaid Overtime Collective defined above. Plaintiffs further ask that we authorize them to disseminate the proposed Notice of Lawsuit attached to the instant Motion to the potential members of the collective. Having conditionally certified this as a collective action pursuant to § 216(b), we have the discretion "'to facilitate the sending of notice to potential class members.'" Symczyk, 656 F.3d at 194 (quoting Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010)). Meridian, however, asks for the opportunity to provide input into the form and content of the notice

to be sent to the potential members of the collective.  The Supreme Court has instructed that "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality."  Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 174 (1989).  Consequently, we believe that "disputes relating to the form and content of notice [and its dissemination] would be best resolved by the parties."  Hively v. Allis-Chalmers Energy, Inc., Civ. A. No. 13-106, 2013 WL 5936418, at *8 (W.D. Pa. Nov. 5, 2013).  Consequently, we "will order that the parties meet and confer regarding the contents and language of the notice, as well as how the notice will be distributed."  Id.; see also Adami v. Cardo Windows, Inc., 299 F.R.D. 68, 82 (D.N.J. 2014) (ordering the parties to a putative FLSA collective action to "meet and confer to devise a notice form that is fair and accurate and consistent with [the court's conditional certification of the putative collective]" and stating that the court would "resolve disputes between the parties as necessary and provide final approval of the notice upon submission by the parties"). An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.