**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JUAN JORDAN and CHERI UHRINEK, individually and on behalf of all other similarly situated,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>MERIDIAN BANK, THOMAS CAMPBELL and CHRISTOPHER ANNAS,<br><br>　　　　Defendants. | CIVIL ACTION NO. 2:17-cv-05251-JP<br><br>[ELECTRONICALLY FILED] |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR**
**FINAL COLLECTIVE AND CLASS ACTION SETTLEMENT APPROVAL**

Juan Jordan and Cheri Uhrinek ("Plaintiffs") respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Final Collective And Class Action Settlement Approval in the above-captioned case. As discussed throughout this filing, this Court should grant final approval to the Parties' proposed settlement because it: reflects mutual compromises informed by diligent discovery efforts; is based on extensive, arm's-length negotiations overseen by experienced mediators; has been strongly endorsed by the Settlement Class Members following a thorough, Court-supervised notice process; and provides the Settlement Class Members with a substantial benefit that compares favorably to the results achieved in other class and collective cases in this Court.

**I.      PROCEDURAL HISTORY**

Plaintiffs worked for Meridian Bank ("Defendants") as Loan Officers in New Jersey and Pennsylvania. *See* Plaintiffs' Am. Cpt. ¶¶ 9-10 [Doc. 28]. On November 21, 2017, Plaintiffs Jordan

and Uhrinek commenced this litigation by filing a class and collective action Complaint for themselves and all similarly-situated Loan Officers whom Defendants allegedly misclassified as exempt employees under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA")  and the Pennsylvania Minimum Wage Law.  *See* Plaintiffs' Complaint [Doc. 1].  Defendants filed an Answer on February 15, 2018, disputing Plaintiffs' allegations and denying its liability to the putative class of Loan Officers.  *See* Defendants' Answer [Doc. 13].

On June 21, 2018, Plaintiffs filed a motion to conditionally certify a nationwide class of Loan Officers whom Defendants allegedly misclassified as exempt outside salespeople under the FLSA. *See* Plaintiffs' Notice Motion [Doc. 32].  Defendants opposed this motion, arguing Plaintiffs' claims were not appropriate for treatment as a collective action.  *See* Defendants' Opposition [Doc. 38]. This Court granted conditional certification on March, 2019.  *See* Order [Doc. 60].

Following this Court's decision, the Parties engaged in merits discovery relating to Plaintiffs' and the conditionally-certified collective's claims.  At the same time, the Parties agreed to a mediation with Peter Winebrake on July 24, 2019. At the end of this mediation session, and only after substantial efforts by Mr. Winebrake (including the presentation of a mediator's proposal), the Parties signed a Memorandum of Understanding ("MOU").  The MOU served as the basis for the Parties' Settlement Agreement.[1]

Since filing the Complaint in November 21, 2017, Class Counsel have extensively investigated the facts, claims, and defenses at issue in the case.  Specifically, Class Counsel drafted and served Rule 26(a) disclosures; researched and briefed issues raised by Defendants' motion to dismiss; researched and briefed class and collective action certification issues; analyzed production by Defendants of extensive electronically stored information (ESI) in the form of time and payroll records for all class members; drafted Interrogatories and Requests for Production of Documents

---

[1] This case involved two mediations.  While the second mediation with Mr. Winebrake was successful and led to a signed MOU, the first mediation with JAMS mediator Jerry Roscoe occurred on May 10, 2018.

on Defendants; interviewed the Named Plaintiffs, opt-in Plaintiffs and other witnesses, and gathered and reviewed thousands of documents.   In response to Plaintiffs' discovery requests, Defendants produced several thousand pages of documents that Class Counsel reviewed and analyzed.   In addition, Class Counsel also prepared detailed Excel spreadsheets and other damage models covering the FLSA and Rule 23 Classes for purposes of their various settlement discussions with Defendants.

Both Parties recognize and acknowledge the benefits of reaching a negotiated settlement. Plaintiffs feel strongly the claims pled in the Amended Complaint have merit and the information they have obtained to date supports their claims.   However, Plaintiffs are mindful of the issues raised by Defendants during the multiple mediations, as well as the defenses pled in Defendants' Answer and Amended Answer, and further recognize the risks and uncertainties associated with achieving class and collective certification in a contested setting and the additional hurdles to overcome at summary judgment and trial.   For these reasons, Plaintiffs believe the proposed settlement is fair, reasonable, adequate and in the best interests of the proposed Settlement Class Members and FLSA Opt-In Plaintiffs.   Defendants maintain Plaintiffs' claims are not appropriate for class certification or second stage collective action certification, and that Defendants have a number of meritorious defenses to the claims asserted in this action.   Nevertheless, Defendants recognize the risks and uncertainties inherent in litigation, the significant expense associated with defending class actions, the costs of any appeals and the disruption to its business operations caused by Plaintiffs' claims.   Accordingly, Defendants believe the Settlement set forth in the Agreement is likewise in their best interest.

## II.    THE SETTLEMENT AGREEMENT

The Parties' proposed settlement is intended to resolve all wage and hour claims against Defendants under federal law and the laws of Pennsylvania.   *See* Settlement Agreement (Exhibit A).

3

The Class Members under the proposed settlement include, collectively, the FLSA Class Members and the Rule 23 Class Members.  The "FLSA Class Members" include:

> All members of the conditionally certified FLSA collective and means all people who worked as inside sales Loan Officers for Defendants, its subsidiaries, or affiliated companies at any time between November 21, 2014 and the Effective Date who worked more than 40 hours in any week without receiving all overtime compensation required by federal law or wages over the required minimum level for every hour worked who have opted-in this Litigation.

*See* Settlement Agreement, ¶ I.O.

The "Rule 23 Class Members" include:

> The "Pennsylvania Rule 23 Class", all Class Members who worked as inside sales Loan Officers for Defendants, its subsidiaries, or affiliated companies in the Commonwealth of Pennsylvania at any time between November 21, 2014 and June 1, 2015 who worked more than 40 hours in any week without receiving all overtime compensation required by Pennsylvania law or wages over the required minimum level for every hour worked, but shall exclude any such people who timely request to opt-out of the Settlement.

*See* Settlement Agreement at ¶ I.N.  Together, the proposed Classes include 50 individuals who will benefit from the proposed settlement.  *See* Baldwin Dec. at ¶ 9 (Exhibit B).

The Settlement Agreement provides that Defendants will pay a maximum of $990,000.00 to resolve this litigation.  *See* Settlement Agreement, §I(X) (Exhibit A).  Subject to Court approval, Plaintiffs propose to divide this amount as follows: a $519,699.55 Settlement Fund for the FLSA Class Members, a $76,300.45 Settlement Fund for the Rule 23 Class Members, $15,000.00 to the two Named Plaintiffs as Service Payments ($936,737.77 total), $346,500.00 in attorneys' fees and costs of $32,500.00 to Class Counsel (Exhibit A).  Under this proposal, payments to the Settlement Class Members will range from $311.43 to $39,006.66. *See* Baldwin Dec. at ¶ 10 (Exhibit B).  The FLSA Settlement Fund will be distributed automatically, without the need to return a claim form, because all members of the FLSA Settlement Class have already affirmatively opted-in to this litigation. Both the FLSA Settlement Fund and the Rule 23 Settlement Fund will be allocated *pro rata* among

the Class members based on each class member's weeks worked during the class period.   All participating Class Members will release Defendants from any and all claims that were, or could have been, brought based on the facts alleged in the Amended Complaint, including all claims relating to overtime pay, minimum wages, penalties, liquidated damages, attorneys' fees and expenses flowing from the conduct alleged therein.  *See* Settlement Agreement at ¶ 42 (Exhibit A).

## III.    THE COURT-APPROVED NOTICE PROGRAM

On September 30, 2019, this Court granted Plaintiffs' Unopposed Motion for Preliminary Class and Collective Action Settlement Approval, approved the form and content of the proposed Notice, approved the proposed notice process, and ordered the Parties to proceed with this process. The Parties selected RG/2 Claims Administration, LLC ("RG/2") to serve as the Settlement Administrator and perform all administrative tasks related to this proposed settlement.   *See* Settlement Agreement at § I (W) (Exhibit A).

On October 7, 2019, Defendants provided RG/2 with the name, last known address, and pertinent employment date information for the 32 FLSA Class Members and the 26 Rule 23 Class Members.  *See* Baldwin Dec. at ¶3 (Exhibit B).  RG/2 then prepared individual copies of the Court-approved Notice for each Rule 23 Class Member that, among other things, described: the litigation and its procedural posture; the state-law classes; the proposed settlement; each person's estimated settlement amount and how this amount was calculated; the Class Members' rights and options for participating in, excluding themselves from, or objecting to the case; the scope of the release sought by Defendants; Class Counsel and their request for an award of attorneys' fees and costs; and the time and location of the final approval hearing.  *Id.* at ¶ 4 (Exhibit B).  *See also* Exhibit A to Baldwin Dec. (Rule 23 Notice).

RG/2 also updated the addresses Defendants provided by utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service and, thereafter, printed and

5

mailed the Notice Packets to all Rule 23 Class Members on October 17, 2019. *See Baldwin Dec.* at ¶ 4 (Exhibit B). Thereafter, RG/2 tracked all returned Packets from this mailing, made reasonable efforts to find updated addresses, performed all necessary re-delivery services and ultimately delivered the Notice Packet to 24 of the 26 Rule 23 Class Members (92%) *Id.* at ¶ 6 (Exhibit B). As of December 2, 2019, RG/2 has not received any objections to the Parties' proposed settlement. *Id.* at ¶ 8 (Exhibit B).

The actions described above suggest that the Settlement Class Members' due process rights have been fulfilled because RG/2 has made reasonable efforts to provide the Settlement Class Members with notice of the proposed settlement, the Parties have provided the Settlement Class Members with a reasonable period of time to evaluate the proposed settlement and the Court-approved Notices contained sufficient information to allow the Settlement Class Members to make an informed decision about whether to participate in the proposed settlement and access to sufficient procedures for seeking more information, objecting to the proposed settlement, or excluding themselves from the proposed settlement.

## IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

To justify class certification, a plaintiff must demonstrate that the requirements of Rule 23 have been met by a preponderance of the evidence. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2183 (2011). "[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision." *See Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1195 (2013) (internal quotations omitted). [2] As discussed below, the instant case satisfies all the

---

[2]  The standard for certifying a settlement class is lower than for a litigation class since there are no manageability concerns. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997). *See also, Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 303 (3d Cir. 2011) ("The proposed settlement here obviates the difficulties inherent in proving the elements of varied claims at trial or in instructing a jury on varied state laws"); *Rougvie v. Ascena Retail Grp., Inc.*, 2016 U.S. Dist. LEXIS 99235, at *45 (E.D. Pa. July 29, 2016) ("Following *Amchem Products, Inc. v. Windsor*, we apply a more generous standard to the manageability question when certifying a class for purposes of settlement only"); *Newberg On Class Actions* § 11:28 (4th ed.) ("Since *Amchem*, approval of settlement classes is generally

necessary requirements to certify a settlement class and the settlement should be granted final approval.

### A.      The Parties' Proposed Settlement Class Satisfies Rule 23(a)

Under Rule 23(a), a party seeking certification must demonstrate four things:

> the class is so numerous that joinder of all members is impracticable;

> there are questions of law or fact common to the class;

> the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> the representative parties will fairly and adequately protect the interests of the class.

See Fed. R. Civ. P. 23(a).  As discussed below, the proposed Settlement Classes satisfy each of these requirements in the context of certifying a settlement class.

### 1.  The proposed Classes are sufficiently numerous

To certify a class for settlement purposes, it must be "so numerous that joinder of all members is impracticable."  *See* Fed. R. Civ. P. 23(a)(1).  Third Circuit courts have previously approved a class "composed of as few as 14 members", *see Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990), *citing Manning v. Princeton Consumer Discount Company, Inc.,* 390 F. Supp. 320, 324 (E.D. Pa. 1975), *aff'd,* 533 F.2d 102 (3d Cir.1976), *cert. den.,* 429 U.S. 865, 97 S. Ct. 173, 50 L.Ed.2d 144 (1976), but there is no specific minimum number of plaintiffs required to maintain a class action.  *See In re Modafinil,* 837 F.3d at 250 ("at this point, we need not specify a 'floor' at which a putative class will fail to satisfy the numerosity requirement").

Two factors are "of primary importance" to assessing whether a given class satisfies the numerosity requirement: "judicial economy and the ability to litigate as joined parties."  *See In re Modafinil,* 837 F3d. at 253, *citing* 5 *Moore's Federal Practice* § 23.22 and 5 *Newberg on Class Actions* § 3.12;

---

routine and courts are fairly forgiving of problems that might hinder class certification were the case not to be settled").

*In re Processed Egg Prods. Antitrust Litig.,* 2016 U.S. Dist. LEXIS 85853, *25 (E.D. Pa. June 30, 2016), *citing* 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1762 (3d ed. 2005). Both of these factors support a finding of numerosity in this case for the purpose of granting final approval to the Settlement Classes.

### a.   Considerations of judicial economy strongly support a finding of numerosity

"Judicial economy" means "[e]fficiency in the operations of the courts and the judicial system, especially the efficient management of litigation so as to minimize duplication of effort and to avoid wasting the judiciary's time and resources." *See Black's Law Dictionary* 863 (8th ed. 2004). An analysis of judicial economy must, therefore, "look[] to the administrative burden that multiple or aggregate claims place upon the courts." *See Marcus v. BMW of N.A., LLC,* 687 F.3d 583, 594 (3rd Cir. 2012). In *Marcus,* the Third Circuit explained that emphasizing the consideration of judicial economy is intended to free courts from "having to decide numerous, sufficiently similar individual actions *seriatim.*" *Marcus,* 687 F.3d at 594. *See In re Modafinil,* 837 F.3d at 254 ("[i]n analyzing judicial economy, [courts] focus on whether the class action mechanism is substantially more efficient than joinder of all parties").

Here, the alternative to a class settlement would be to require dozens of Class Members to pursue their individual state court claims separately. Although these claims are based on virtually identical facts, managing and resolving the litigation of so many separate claims – each of which may ultimately require a separate trial or reach a different result – would clearly run counter to the goal of judicial economy. *See King Drug Co. of Florence v. Cephalon, Inc.,* 309 F.R.D. 195, 207 (E.D. Pa. 2015), *citing Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.,* 246 F.R.D 293, 306–07 (D.C. Cir. 2007) ("judicial economy would be served by resolving the common issues raised in this case in a single action, rather than 38 individual ones"). Alternatively, allowing the Parties to enter into a settlement that resolves all of the Plaintiffs' claims, avoids duplicative litigation of common questions and

provides a consistent result for all, necessarily promotes judicial economy.  *See Grimes v. Vitalink Comm. Corp.,* 17 F.3d 1553, 1563 (3rd Cir. 1994) *citing TBK Partners Ltd. v. Western Union Corp,* 675 F.2d 456, 460 (2nd Cir. 1982).

> **b.    Plaintiffs' motivation to pursue their claims collectively strongly supports a finding of numerosity**

The Plaintiffs' "motivation to be joined" considers whether individual putative class members have the "ability to sue separately." *In re Modafinil,* 837 F.3d at 253, *citing* 5 *Moore's Federal Practice* § 23.22; 5 *Newberg on Class Actions* § 3.12; *Pa. Pub. Sch. Emps. Ret. Sys.,* 772 F.3d at 120.  This consideration is a key focus, because: "[t]he second purpose behind the numerosity requirement is to further the broader class action goal of providing those with small claims reasonable access to a judicial forum for the resolution of those claims." *See In re Modafinil,* 837 F.3d. at 257, *citing Marcus,* 687 F.3d at 594 (the numerosity requirement "creates greater access to judicial relief, particularly for those persons with claims that would be uneconomical to litigate individually").

Economic considerations are a key consideration (if not the driving factor) in any civil lawsuit and inform the litigant's motivations and decisions.  In this case, based on a series of assumptions supported by data and information produced in this litigation, the Plaintiffs are seeking to recover unpaid minimum wages for weeks where they did not earn a commission, and overtime wages for hours worked over 40 hours in a workweek. *See* Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Approval of Section 216(b) Settlement and Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion"), p.2 [Doc. 77-1].  The payouts to individual Settlement Class Members range from $311.43 to $39,006.66 (not discounting for litigation risk or any other considerations).  *See* Baldwin Dec. at ¶ 10 (Exhibit B). The prospect of recovering even the maximum amount of $39,006.66 does not provide the typical loan officer with a

compelling incentive to retain counsel, pursue an individual lawsuit, participate in the discovery process, or accept the risks of suing their employer.[3]

Comparing the value of their maximum possible recovery to the time, effort and risk required for each Plaintiff to pursue a separate state-law wage claim, the average Class Member would likely abandon their claims if required to pursue them individually.  This conclusion is directly supported by the events of the past few months, namely that the individualized Notice Forms provided the Class Members with damage calculations valued within a range of $311.43 to $39,006.66 of their maximum possible damages, but drew no objections and no exclusion requests. *See* Baldwin Dec. at ¶¶ 7-8 (Exhibit B).  This result clearly demonstrates the Class Members' true motivation to be joined and directly supports a finding of numerosity.

### 2.    The proposed Classes meet the commonality requirement

The "commonality" prerequisite examines the existence of "questions of law or fact common to the class."  *See* Fed. R. Civ. P. 23(a)(2).  Notably, the commonality requirement does not mean that all claims or facts among class members must be identical.  *See Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.,* 2016 U.S. Dist. LEXIS 124202, *11 (E.D. Pa. Sep. 12, 2016). Rather, a single common question of law or fact will suffice.  *See In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 133 (E.D. Pa. 2015), *citing Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) ("the commonality bar "is not a high one").

Here, Rule 23(a)(2) is satisfied for purposes of certifying the proposed state-law settlement classes, because Plaintiffs assert the Settlement Class shares common questions of law or fact,

---

[3] If any Settlement Class Members prefer to bring an individual lawsuit, the Parties' agreement allows them to exclude themselves from the settlement and do so and the proposed class notice explains this right.  *See* Class Action Settlement Notice [Doc. 77-2] (Exhibit D).  Since RG/2 disseminated the Notice Packet, Class Counsel have not received any communications alerting them to any Class Member's interest in bringing a separate, individual lawsuit on the theories pled in the Amended Complaint, or received notice that any such filings have been made. *See* Baldwin Dec. at ¶¶ 7-8.

including:

>Whether Defendants conducted any analysis of the duties of Plaintiffs and the Settlement Class Members before classifying them as exempt;
>
>Whether the duties of Plaintiffs and the Settlement Class Members support their exempt status;
>
>Whether Plaintiffs and the Settlement Class Members are entitled to receive overtime premium wages for working more than 40 hours in a week;
>
>Whether Plaintiffs and the Settlement Class Members worked more than 40 hours in given workweeks;
>
>Whether Defendants maintained accurate contemporaneous records of the time worked by Plaintiffs and the Settlement Class Members;
>
>Whether Plaintiffs and the Settlement Class Members have suffered damages, and the proper measure of those damages; and
>
>Whether Defendants' failure to pay minimum wages and/or overtime compensation to the Plaintiffs and the Settlement Class Members was willful.

*See* Am. Cpt. at ¶34 [Doc. 29].  Because Plaintiffs allege that the claims of all Class Members are based on the same policies and practices that caused them to be denied minimum and overtime premium wages, their claims are susceptible to common proof sufficient to meet the commonality requirement.  *See Young v. Tri Cty. Sec. Agency, Inc.,* 2014 U.S. Dist. LEXIS 62931, at *7 (E.D. Pa. May 7, 2014).

### 3. The proposed Classes meet the typicality requirement

Rule 23(a) requires the claims of the representative plaintiff to be "typical" of the claims of the class.  *See* Fed. R. Civ. P. 23(a)(3).  In the context of certifying a settlement class, this requirement is not onerous: so long as the class and its representative present similar legal theories arising from the same event, practice, or course of conduct, the requirement is met – even if factual distinctions exist between them. *See Skeen v. BMW of N. Am., LLC,* 2016 U.S. Dist. LEXIS

97188, *18 (D.N.J. July 26, 2016); *Inmates of Bucks Cnty. Correctional Facility v. Cnty. of Bucks*, 2004 U.S. Dist. LEXIS 30547, at *14 (E.D. Pa. Dec. 20, 2004) ("Even pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories").

Here, Plaintiffs contend that the Named Plaintiff for the Pennsylvania state law Class is typical of the claims belonging to the members of the Pennsylvania state Sub Class. *See* Am. Cpt. at ¶¶34-36 [Doc. 29]. Plaintiffs have a strong basis for contending the Settlement Class Members' claims arise from the same course of conduct (*i.e.*, being required to work more than 40 hours in given workweeks) and led to similar harm (*i.e.,* denial of overtime and minimum wages). *See* Am. Cpt. at ¶¶ 29-36. Because Plaintiffs contend that the Settlement Class Members' claims are based on the same facts and practices and grounded on the same legal theory, the typicality requirement is met. *See Young,* 2014 U.S. Dist. LEXIS 62931 at *9.

### 4.     Plaintiffs and their counsel will adequately represent the Proposed Classes

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). Adequacy is satisfied by showing that class counsel is competent and qualified to conduct the litigation and class representatives have no conflicts of interests with the class. *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007). Both prongs of the adequacy test are met here for the purposes of certifying a settlement class.

Plaintiffs have retained counsel with significant experience in prosecuting class and collective actions, including multi-state wage and hour claims. For example, federal courts have repeatedly approved Plaintiffs' counsel to serve as lead or co-lead counsel in multi-state wage and hour, as well as other types of, class action cases. *See* Stephan Zouras LLP Bio (Exhibit E); Erik Langeland Bio (Exhibit F); Tostrud Law Group, P.C. Bio (Exhibit G). *See Gonzalez v. Corning*, 2016 U.S. Dist. LEXIS 43707, *152 (W.D. Pa. Mar. 31, 2016) ("The adequacy requirement concerns both

"the experience and performance of class counsel").

The Named Plaintiffs do not obviously possess any interests that conflict with those of the Settlement Class Members. *See Rougvie v. Ascena Retail Grp., Inc.,* 2016 U.S. Dist. LEXIS 99235, *39 (E.D. Pa. July 29, 2016) ("adequacy inquiry ensures absence of conflicts of interest between named parties and the class they seek to represent"). Indeed, the Named Plaintiffs' interests and the state-law Class Members' interests appear to be aligned since the Named Plaintiffs belong to the state-law classes they seek to represent, share the same claims as the members of those classes and have the same interest in obtaining relief as the absent Settlement Class Members. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, 157 (n.13) (1982) (noting that where the claims of the class and class representatives are coextensive, there is no conflict). Thus, the Named Plaintiffs meet the adequacy requirement.

**B.   The Proposed Settlement Classes Satisfy Rule 23(b)(3)**

Plaintiffs must also show this action fits into one of the categories defined in Rule 23(b). Here, Plaintiffs seek certification of the settlement class under Rule 23(b)(3), which allows a class action to be maintained "if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).

**1.   The proposed Settlement Classes meet the predominance requirement**

The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). In other words, predominance requires that common issues of law and fact predominate over individual issues. *Ripley*, 287 F.R.D. at 309. Here, Plaintiffs contend that for the purposes of certifying a settlement class, common questions of law or fact predominate over any questions

affecting only individual members.  *See* Am. Cpt. at ¶¶ 14, 15-20, 26, 34.  Plaintiffs' contention is based on the existence of numerous common questions, including: whether Defendants conducted any analysis of the duties of Plaintiffs and the Settlement Class Members before classifying them as exempt; whether the duties of Plaintiffs and the Settlement Class Members support their exempt status; whether Plaintiffs and the Settlement Class Members are entitled to receive overtime premium wages for working more than 40 hours in a week; whether Plaintiffs and the Settlement Class Members worked more than 40 hours in given workweeks; whether Defendants maintained accurate contemporaneous records of the time worked by Plaintiffs and the Settlement Class Members; whether Plaintiffs and the Settlement Class Members have suffered damages, and the proper measure of those damages; and whether Defendants' failure to pay minimum wages and/or overtime compensation to the Plaintiffs and the Settlement Class Members was willful.  *See* Am. Cpt. at ¶34 [Doc. 29].

Plaintiffs contend the predominance test is met for the purpose of certifying a settlement class because Defendants employed common work and compensation policies that treated Plaintiffs and all Settlement Class Members as exempt employees and caused them to work under common terms and conditions of employment that resulted in the minimum and overtime wage violations at issue.  *Id.* at ¶35 [Doc. 29].  These allegations satisfy the predominance requirement because these violations can be proven with common evidence.  *See Ripley*, 287 F.R.D. at 316-17 (certifying settlement class for alleged overtime violations where employees allegedly uncompensated for off-the-clock work due to Defendants' timekeeping and payroll policies); *Hall v. Best Buy Co., Inc.*, 274 F.R.D. 154 (E.D. Pa. Mar. 24, 2011) (certifying settlement class of employees who were allegedly required to undergo off-the-clock security checks at the end of shifts and were denied meal and rest breaks).

Consistent with the remedial purpose of the FLSA, other courts have considered the

predominance test to be met and certified classes with far fewer shared facts. *See, e.g.*, *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 106 (E.D.N.Y. 2011) (certifying class of plumbers who incurred business expenses, including vehicular expenses from owning and maintaining vans, which allegedly brought their wages below various states' minimum wage levels); *Moreno-Espinosa v. J & J AG Products, Inc.*, 247 F.R.D. 686, 691 (S.D. Fla. Nov. 29, 2007) (certifying class of alien employees who were allegedly under-reimbursed for pre-employment expenses, such as transportation, lodging, passports, and visas).

### 2. The proposed Class meets the superiority requirement

Rule 23(b)(3) requires the Court to examine four considerations to assess whether allowing a class action is superior to other available methods for fairly and efficiently adjudicating the parties' controversy, namely:

> The class members' interests in individually controlling the prosecution or defense of separate actions;
>
> The extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> The likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23(b)(3)(A)-(D). The superiority analysis requires courts to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *Ripley*, 287 F.R.D. at 310.

Here, the alternative to the class action device would be for each for the 26 state-law Class Members to litigate their claims individually. Plaintiffs respectfully submit that requiring individual litigation would result in many claims going unheard, since the amount of money any given Class member could hope to recover would not clearly justify the pursuit of individual lawsuits. *O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266, 293 (E.D. Pa. 2003) ("This class possesses no

manageability issue because it is a settlement only class"). *See* Section IV(A)(1), above. Thus, a settlement class is superior in this case because it will promote judicial economy and provide a fair and consistent outcome for all Settlement Class Members, not just the four people who stepped forward as Named Plaintiffs for the Amended Complaint.

### C.      Final FLSA Certification Is Also Warranted

The relevant factors at second-stage FLSA certification include: "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *See Adami*, 2016 U.S. Dist. LEXIS 42152, at *17. *citing Zavala*, 691 F.3d at 536-37. As discussed above, these considerations are all met in this case.

As described throughout the pleadings and confirmed by the documents and data Defendants produced, Plaintiffs contend that all members of the proposed FLSA Class worked for Defendants: in similar jobs (*i.e.,* loan officers); on the same type of schedule, (*i.e.,* full-time, five days per week); under the same compensation structure (*i.e.,* commission only); and under similar terms and conditions of employment (i.e., the same timekeeping and compensation policies and procedures). *See* Am. Cpt. at ¶¶ 1, 21-26 [Doc. 29]. Given these similarities, Plaintiffs have ample basis to contend that the FLSA Settlement Class members advance the same claim, seek the same form of relief, and do so based on similar circumstances. These facts, considered alongside the discussion of the class certification requirements, above, and presented on an uncontested basis supports and justifies a grant of final FLSA certification for settlement purposes.

## V.      THE COURT SHOULD GRANT FINAL APPROVAL TO THE PARTIES' PROPOSED SETTLEMENT

### A.      Standard Governing Final Settlement Approval

Generally, settlements are favored in the class action context. *See Hall*, 274 F.R.D. at 168;

*Rosenau v. Unifund Corp.*, 646 F. Supp. 2d 743, 751 (E.D. Pa. 2009).  As the Third Circuit Court of Appeals has observed, "there is an overriding public interest in settling class action litigation."  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *Moore v. Comcast Corporation*, 2011 U.S. Dist. LEXIS 6929, *7 (E.D. Pa. Jan. 24, 2011) ("Settlement of complex class action litigation conserves valuable judicial resources, avoids the expense of formal litigation, and resolves disputes that otherwise could linger for years"); *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1455 (E.D. Pa. 1995) ("[T]he extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy encouraging settlements to 'an overriding public interest'").

### B.    The Parties' Proposed Settlement Is Entitled To A Presumption Of Fairness

In reviewing a settlement for final approval, a trial court should apply an initial presumption of fairness where:

> the settlement negotiations occurred at arm's length;
>
> there was sufficient discovery;
>
> the proponents of the settlement are experienced in similar litigation; and
>
> only a small fraction of the class objected.

*See Carroll v. Stettler*, 2011 U.S. Dist. LEXIS 121185, *13 (E.D. Pa. Oct. 19, 2011), *citing In re Warfarin Sodium*, 391 F.3d at 535.  The Parties' proposed settlement is entitled to an initial presumption of fairness, because it meets all four of these criteria.

First, the proposed Settlement Agreement is the result of multiple, arm's-length negotiations by experienced counsel aided by experienced mediators – Jerry Roscoe and Peter Winebrake.  The fact that the settlement value was established by a mediator's proposal, informed by an independent analysis of the strengths and weaknesses of both Parties' positions, further demonstrates the arm's length nature of the settlement and the absence of collusion in the settlement negotiations.  *See*

17

Settlement Agreement (Exhibit A).

Second, the Parties' mediation preparations and negotiations were informed by exchanges of interrogatories and requests for documents by the Parties, eventually resulting in a large document and data production, including detailed employee time and pay data, relevant to Plaintiffs' claims. *See* Langeland Dec. at ¶ 4 (Exhibit C).  This production, which occurred in addition to the Parties' typical discovery efforts, permitted the sort of in-depth analysis and assessment of the strengths, weaknesses and risks inherent to the Parties' respective positions that supports an initial presumption of fairness.  *See Carroll*, 2011 U.S. Dist. LEXIS 121185 at *14.

Third, an initial presumption of fairness is appropriate in reviewing this settlement, because the Parties were both represented by counsel experienced in similar litigation.  *Carroll*, 2011 U.S. Dist. LEXIS 121185 at *14.  *See* Stephan Zouras LLP Bio (Exhibit E); Erik H. Langeland, P.C. Bio (Exhibit F); Tostrud Law Group, P.C. Bio (Exhibit G).

Fourth, after RG/2 mailed the Notice Packet to 26 Class Members, no person has asked to be excluded from the Class and no one has objected to the Parties' proposed settlement.  *See* Baldwin Dec. at ¶¶ 7-8 (Exhibit B).  This overwhelmingly positive response to a Notice that included individualized damage estimates for each Class Member demonstrates the overwhelming support for this settlement among the Class members and entitled the Parties to a presumption of fairness.  *See Carroll*, 2011 U.S. Dist. LEXIS 121185, *14.

C.      **The Parties' Proposed Settlement Is Fair, Reasonable And Adequate**

After determining application of the initial presumption of fairness, courts in this Circuit typically consider whether the proposed settlement is fair, reasonable and adequate under the nine factors identified in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), including:

> the complexity, expense and likely duration of the litigation;

> the reaction of the class to the settlement;

the stage of the proceedings and the amount of discovery completed;

the risks of establishing liability;

the risks of establishing damages;

the risks of maintaining the class action through the trial;

the ability of the Defendants to withstand a greater judgment;

the range of reasonableness of the settlement fund in light of the best possible recovery; and

the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*See Carroll*, 2011 U.S. Dist. LEXIS 121185 at *14-15.   This Court should approve the Parties' proposed settlement because, as discussed below, all of the *Girsh* factors either weigh in favor of approval, or do not suggest the proposed settlement is unfair.

> **1.    The Parties' proposed settlement is fair, reasonable and adequate in light of the complexity, expense, and likely duration of the litigation**

The first *Girsh* factor requires consideration of "the probable cost, in both time and money, of continued litigation" to determine the degree to which the class would benefit from settling the class claims amicably.   *See Frederick v. Range Res.-Appalachia, LLC*, 2011 U.S. Dist. LEXIS 27350 (W.D. Pa. Mar. 17, 2011), *citing Erie County Retirees Ass'n, v. County of Erie*, 192 F. Supp. 2d 369, 373 (W.D. Pa. 2002).   Absent a negotiated settlement, this case would have proceeded to Defendants' motion for partial judgment on the pleadings, followed by class-wide merits and damages discovery, likely including dozens of depositions and then on to contested motions for final FLSA certification (or decertification), Rule 23 class certification and summary judgment if not trial.   *See* Langeland Dec. at ¶ 8 (Exhibit C).   These additional matters would likely have drawn out these proceedings (filed in November, 2017) well into 2021, with substantial fees and costs expended on both sides and little certainty in the result.   *Id.*   Thus, the complexity, expense, and likely duration of the

litigation support a finding that the Parties' proposed settlement is fair, reasonable and adequate.  *See Carroll*, 2011 U.S. Dist. LEXIS 121185 at *15-16.

> **2.     The Parties' proposed settlement is fair, reasonable and adequate in light of the overwhelmingly favorable reaction of the Class to the settlement**

The second *Girsh* factor "attempts to gauge whether members of the Class support the settlement." *Carroll*, 2011 U.S. Dist. LEXIS 121185 at *16.  To measure the class's reaction to the terms of a settlement, courts consider the "number and vociferousness" of the objectors. *Benjamin v. Dep't of Pub.*, 2011 U.S. Dist. LEXIS 99044, 13-14 (M.D. Pa. Sept. 2, 2011), *citing General Motors Pick-Up Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 812 (1995).  As previously described, after RG/2 mailed the Notice Packet to 26 Class Members, no persons asked to be excluded from the Class and no one objected to the proposed settlement.  *See* Baldwin Dec. at ¶¶ 7-8 (Exhibit B).  This overwhelmingly positive response to a Notice that included individualized estimates of each Class Member's damage award demonstrates that the Parties' proposed settlement is fair, reasonable and adequate.  *See In Re Prudential Insurance Company of America Sales Litigation*, 148 F.3d 283, 318 (3d Cir. 1998) (affirming settlement approval for 8 million class members with 300 objectors and 19,000 opt-outs; *Carroll*, 2011 U.S. Dist. LEXIS 121185 at *16 (approving settlement for 2,627 class members with one objector and two opt-outs); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (affirming settlement approval for 281 class members with 29 objectors).

> **3.     The Parties' proposed settlement is fair, reasonable and adequate in light of the stage of the proceedings and the amount of discovery completed**

The third *Girsh* factor tests whether Class Counsel had an adequate appreciation of the merits of the case before negotiating the proposed settlement.  *See In re General Motors Corp. Pick-Up Trucks Fuel Tank Prod. Liab. Litig.*, 55 F.3d at 813.  This case has been actively litigated for two years.  As discussed above, in addition to the typical discovery sought to inform their positions on

20

conditional certification, the Parties engaged in extensive confirmatory discovery that included time and pay data and thousands of pages of employee time records, payroll summaries, and personnel files to permit damages calculations for mediation.  *See* Langeland Dec. at ¶ 4 (Exhibit C).  As a result, the Parties were able to perform an in-depth analysis and assessment of the strengths and weaknesses of their respective positions.  Because the Parties' multiple mediation sessions occurred after almost two years of litigation, after both sides had the benefit of extensive discovery, this Court should find the proposed settlement is fair, reasonable and adequate.  *See Carroll*, 2011 U.S. Dist. LEXIS 121185 at *18.

> **4.    The Parties' proposed settlement is fair, reasonable and adequate in light of the risks of establishing liability and damages**

The fourth and fifth *Girsh* factors "require the Court to examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them."  *See Carroll*, 2011 U.S. Dist. LEXIS 121185, *18-19, *citing In re General Motors Corp. Pick-Up Trucks Fuel Tank Prod. Liab. Litig.*, 55 F.3d at 814.  As at least one court has observed, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes."  *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Here, Plaintiffs' primary contention is that Defendants' alleged class-wide policies and procedures led to Plaintiffs working over forty hours per workweek without minimum wage or overtime compensation in certain workweeks.  *See* Am. Cpt. at ¶¶ 21-27, 34, 35 [Doc. 29].  Defendants plead several defenses, including that: its policies and practices were lawful; Plaintiffs claims were barred by the statutes of limitations; Plaintiffs cannot meet the standards for class certification or meet the burden for collective action; prior releases and/or settlement agreements bar certain individuals from participating in this matter; Defendants' actions were not willful; and Defendants' actions were made in good faith. *See* Answer [Doc. 13].

Had the Parties not reached a negotiated settlement, Plaintiffs would have proceeded to contend their FLSA claim was appropriate for final certification and their state law claims were appropriate for Rule 23 class certification because of the common, class-wide facts and issues they present.   However, Plaintiffs recognize they might not have prevailed on a contested class certification motion if the Court found, for example, that issues common to the putative Classes are overwhelmed by issues relating to individual Class Members' particular circumstances.

Because of the disparity between their litigation positions, it is clear that both Parties would have faced substantial risk and uncertainty were this litigation to continue, including the significant expense associated with prosecuting or defending these claims and any appeals, and the disruption to their lives and continuing business operations.   Accordingly, without conceding any adverse conclusions would be correct or appropriate, both Parties believe that the Settlement set forth in the Agreement is in their best interests.   This situation demonstrates that the Parties' proposed settlement is fair, reasonable and adequate in light of the material risks associated with continued litigation.

> **5.    The Parties' proposed settlement is fair, reasonable and adequate in light of the risks Plaintiffs would face in maintaining the class action through trial**

The sixth *Girsh* factor requires the court to consider of the risks of maintaining the class action through trial.  *See Frederick*, 2011 U.S. Dist. LEXIS 27350 at *18-19.[4]  This factor weighs in favor of settlement where a risk exists that the class action device may become unmanageable at some point prior to trial, creating the possibility of decertification.  *Id., citing In re Prudential*, 148 F.3d at 321.  Were this litigation to continue on a contested basis, Defendants would likely challenge Plaintiffs' right to maintain this litigation on a class-wide basis and raise defenses, including that it: acted in good faith, acted in compliance with the applicable wage laws and did not knowingly allow

---

[4]  The Third Circuit has opined that this *Girsh* factor "may not be significant" in settlement-only class actions.  *See Frederick*, 2011 U.S. Dist. LEXIS 27350 at *18-19, *citing In re Prudential*, 148 F.3d at 321.

the Settlement Class Members to work more than 40 hours per week. *See* Answer at pp. 17-18

(affirmative defenses) [Doc. 13]. Consistent with the issues discussed in preceding sections, these

arguments could raise individual issues complicating Plaintiffs' ability to prosecute their claims on a

class action basis through trial. *See Carroll*, 2011 U.S. Dist. LEXIS 121185, *19-20.

> **6.    The Parties' proposed settlement is fair, reasonable and adequate in light of Defendants' ability to withstand a greater judgment**

The seventh *Girsh* factor has been interpreted to address "whether the Defendants could

withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant Corp.*

*Litig.*, 264 F.3d 201, 240 (3d Cir. 2001). However, this principle has been expanded to include

consideration of the practical reality that, even if a Defendant could possibly afford a greater

amount, courts need not reject an otherwise reasonable settlement. *See, e.g., Saini v. BMW of N. Am.,*

*LLC*, 2015 U.S. Dist. LEXIS 66242, at *26 (D.N.J. May 21, 2015). The factual record developed on

this point is sparse, but Plaintiffs concede that, as a nationwide company with no obvious concerns

relating to its ongoing viability, Defendants may be able to withstand a judgment of more than

$990,000.00. Ignoring the many facts that led the Parties and their mediator to reach a $990,000.00

settlement in this case, the bare fact that Defendants might theoretically be able to afford a larger

payment does not "trump" this Court's consideration of the other *Girsh* factors showing the Parties'

proposed settlement is fair, reasonable and adequate. *See In re Cigna Corp. Sec. Litig.*, 2007 U.S. Dist.

LEXIS 51089, *13 (n.3) (E.D. Pa. July 13, 2007) ("Even if we were to assume that the seventh *Girsh*

factor – the Defendants' ability to withstand a greater judgment – suggests we reject the settlement,

this factor alone does not outweigh all the others").

> **7.    The Parties' proposed settlement is fair, reasonable and adequate in light of the best possible recovery and all the attendant risks of litigation**

The eighth *Girsh* factor addresses whether a proposed settlement is fair in light of the best possible recovery.  As discussed above, ignoring all the risks associated with continued litigation, payouts to individual Class Members will range from $311.43 to $39,006.66. *See* Baldwin Dec. at ¶ 10 (Exhibit B).  In the Parties' proposed settlement, the Settlement Class Members will receive an average payment of about $11,920.00.  Judged by this standard, the Parties' proposed settlement deserves final approval because the value it provides surpasses the results achieved in many other class action lawsuits.  *See e.g.*, *In re Aetna Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 68, *35 (E.D. Pa. Jan. 4, 2001) (approving a settlement providing a recovery of approximately 10% of the best possible recovery, noting this ratio is consistent with other approved settlements); *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approving a settlement that provided 5.2% of best possible recovery); *In re Greenwich Pharmaceutical Securities Litigation*, 1995 U.S. Dist. LEXIS 5717, *14 (E.D. Pa. April 26, 1995) (approving a settlement that provided 4.3% of plaintiffs' estimated maximum recovery).

## VI.   CONCLUSION

The Parties' proposed settlement was reached only after extensive discovery and arm's-length negotiations by experienced lawyers.  It provides a fair result for the Settlement Class Members and has received their overwhelming support.  The Parties have thoroughly investigated the issues of law and fact presented in this case and both believe their proposed settlement is favorable to the continued litigation of Plaintiffs' claims.  Nothing in the Parties' negotiations, or in the Settlement Agreement, provides any basis for doubting the fairness of their compromise.  For the reasons detailed here, and in the accompanying documents, Plaintiffs respectfully submit that the Parties' proposed settlement is reasonable and deserving of final approval through entry of the proposed Order.

Dated: December 3, 2109                    Respectfully Submitted,


                                           /s/ James B. Zouras
                                           James B. Zouras
                                           Ryan F. Stephan
                                           STEPHAN ZOURAS, LLP
                                           100 North Riverside Plaza, Suite 2150
                                           Chicago, IL 60606
                                           (312) 233-1550
                                           jzouras@stephanzouras.com
                                           rstephan@stephanzouras.com

                                           Erik H. Langeland
                                           733 Third Avenue, 15th Floor
                                           New York, N.Y. 10017
                                           (212) 354-6270
                                           elangeland@langelandlaw.com

                                           Jon A. Tostrud
                                           Anthony Carter
                                           TOSTRUD LAW GROUP, P.C.
                                           1925 Century Park East, Suite 2100
                                           Los Angeles, CA 90067
                                           (310) 278-2600
                                           jtostrud@tostrudlaw.com
                                           acarter@tostrudlaw.com